IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:17-CV-26-D

| | |
|---|---|
| PAULSON BEACH VENTURES, LLC, <br> d/b/a First Light Breakfast & Burgers, <br><br> Plaintiff, <br><br> v. <br><br> CHARLTON L. ALLEN, in his <br> official capacities as Chair of the North <br> Carolina Industrial Commission, <br> BRYAN A. STRICKLAND, in his <br> official capacities as the Director of the <br> Compliance and Fraud Investigative Division <br> of the North Carolina Industrial Commission, <br> LAUREN HALBERT, in her official capacities <br> as Assistant Director of the Compliance and <br> Fraud Investigative Division of the North <br> Carolina Industrial Commission, and <br> AMANDA M. PHILLIPS, in her official <br> capacities as Special Deputy Commissioner <br> for the North Carolina Industrial Commission, <br> THE NORTH CAROLINA INDUSTRIAL <br> COMMISSION, and THE STATE OF <br> NORTH CAROLINA, <br><br> Defendants. | **ORDER** |

On July 7, 2017, the court held a hearing concerning Paulson Beach Ventures, LLC's ("Paulson Beach Ventures" or "plaintiff") motion for a preliminary injunction. As explained below, Younger v. Harris, 401 U.S. 37 (1971), and its progeny mandate abstention. Thus, the court denies plaintiff's motion for a preliminary injunction, abstains, and stays the action pending conclusion of ongoing state proceedings.

I.

Paulson Beach Ventures challenges an $86,750 civil penalty the North Carolina Industrial Commission assessed on March 7, 2017, pursuant to N.C. Gen. Stat. § 97-94(b). See Compl. [D.E. 1] ¶¶ 1–10, 16–50; [D.E. 5-7] (copy of order imposing the civil penalty).[1] The North Carolina

---

[1] N.C. Gen. Stat. § 97-94 provides:

(a) Every employer subject to the compensation provisions of this Article shall file with the Commission, in form prescribed by it, as often as the Commission determines to be necessary, evidence of its compliance with the provisions of G.S. 97-93 and all other provisions relating thereto.

(b) Any employer required to secure the payment of compensation under this Article who refuses or neglects to secure such compensation shall be punished by a penalty of one dollar ($1.00) for each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) for each day of such refusal or neglect, and until the same ceases; and the employer shall be liable during continuance of such refusal or neglect to an employee either for compensation under this Article or at law at the election of the injured employee.

The penalty herein provided may be assessed by the Industrial Commission administratively, with the right to a hearing if requested within 30 days after notice of the assessment of the penalty and the right of review and appeal as in other cases. Enforcement of the penalty shall be made by the Office of the Attorney General. The clear proceeds of penalties provided for in this subsection shall be remitted to the Civil Penalty and Forfeiture Fund in accordance with G.S. 115C-457.2.

(c) Any employer required to secure the payment of compensation under this Article who willfully fails to secure such compensation shall be guilty of a Class H felony. Any employer required to secure the payment of compensation under this Article who neglects to secure the payment of compensation shall be guilty of a Class 1 misdemeanor.

(d) Any person who, with the ability and authority to bring an employer in compliance with G.S. 97-93, willfully fails to bring the employer in compliance, shall be guilty of a Class H felony. Any person who, with the ability and authority to bring an employer in compliance with G.S. 97-93, neglects to bring the employer in compliance, shall be guilty of a Class 1 misdemeanor. Any person who violates this subsection may be assessed a civil penalty by the Commission in an amount up to one hundred percent (100%) of the amount of any compensation due the employer's employees injured during the time the employer failed to comply with G.S. 97-93.

2

Industrial Commission assessed the civil penalty because Paulson Beach Ventures failed to have worker's compensation insurance for 1,735 days between 2012 and 2016. See [D.E. 5-7]. Paulson Beach Ventures contends that the civil penalty violates the Eighth Amendment's Excessive Fines Clause. See Compl. ¶¶ 56–74. Paulson Beach Ventures also contends that defendants violated its rights to due process and equal protection in assessing the civil penalty. See id. ¶¶ 75–99. Paulson Beach Ventures seeks a declaratory judgment that the N.C. Gen. Stat. § 97-94 penalty assessment and associated practices, facially and as applied, violate its Eighth and Fourteenth Amendment rights. See id. (prayer for relief). Paulson Beach Ventures also seeks a preliminary and permanent injunction, compensatory and nominal damages, and reasonable attorney's fees and costs. Id.

When Paulson Beach Ventures filed this federal action, Paulson Beach Ventures had not paid the civil penalty and was in the midst of state administrative proceedings in the North Carolina Industrial Commission disputing the civil penalty. See Compl. ¶¶ 30–50. Paulson Beach Ventures can raise its constitutional challenges in the North Carolina Industrial Commission. If Paulson Beach Ventures is unsatisfied with the result of those state administrative proceedings, it can seek judicial review in the North Carolina Court of Appeals and raise its constitutional challenges in that court. See N.C. Gen. Stat. § 97-94(b); Atiapo v. Goree Logistics, Inc., 240 N.C. App. 1, 6–8, 770 S.E.2d 684, 688–89 (2015); Johnson v. Herbie's Place, 157 N.C. App. 168, 178–79, 579 S.E.2d 110, 117–18 (2003); Harrison v. Tobacco Transport, Inc., 139 N.C. App. 561, 570, 533 S.E.2d 871, 877 (2000). If unsatisfied with the result in the North Carolina Court of Appeals, Paulson Beach

---

> (e) Notwithstanding the provisions of G.S. 97-101, the Commission may suspend collection or remit all or part of any civil penalty imposed under this section on condition that the employer or person pays the compensation due and complies with G.S. 97-93.

N.C. Gen. Stat. § 97-94.

3

Ventures can seek review in the Supreme Court of North Carolina.

"In Younger, the Supreme Court detailed our national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." Nivens v. Gilchrist, 444 F.3d 237, 241 (4th Cir. 2006) (quotation omitted); see Younger, 401 U.S. at 41. Under Younger, a federal court generally must abstain from exercising jurisdiction and interfering in a state proceeding if "(1) there is an ongoing state judicial proceeding brought prior to substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides adequate opportunity to raise constitutional challenges." Nivens, 444 F.3d at 241; see Ohio Civil Rights Comm'n v. Dayton Christian Sch., 477 U.S. 619, 626–29 (1986); Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431–37 (1982).

When Younger applies, it "contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts." Nivens, 444 F.3d at 246 (quotation omitted); see Gibson v. Berryhill, 411 U.S. 564, 577 (1973). Nonetheless, where a plaintiff files a federal action and seeks not only an injunction concerning an ongoing state proceeding but also damages in the federal action, the proper resolution under Younger is to stay the plaintiff's federal action pending conclusion of the state proceeding. See, e.g., Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 731 (1996); Beam v. Tatum, 299 F. App'x 243, 248 (4th Cir. 2008) (per curiam) (unpublished); Traverso v. Penn, 874 F.2d 209, 213 (4th Cir. 1989).

A party cannot avoid Younger simply by refusing to exhaust state administrative or judicial remedies. See Moore v. City of Asheville, 396 F.3d 385, 394–97 (4th Cir. 2005). In Moore, a street preacher received two citations for violating the city's noise ordinance. The street preacher paid the fine for the first citation without challenging the citation, but initiated the administrative appeals process for the second citation by filing an appeal with the Noise Ordinance Appeals Board. Id. at

4

389. After the Board affirmed the assessment of the citation, the street preacher paid the fine on the second citation and abandoned further state administrative and judicial review. Id. By statute, the street preacher had the right to appeal the Board's decision to the City Manager and then seek a writ of certiorari in North Carolina superior court. Id. at 388. Instead, the street preacher let the time for taking appeal from his citations lapse and filed suit in federal district court for damages and declaratory and injunctive relief against the city and its officials. Id. at 388–89. The street preacher alleged that the noise ordinance, as well as related ordinances, violated the First and Fourteenth Amendments to the U.S. Constitution on their face and as applied. Id. at 387. Among other things, the street preacher sought a refund of the fines that he had paid. See id. at 396-97.

In Moore, the district court stayed the proceedings based on Younger "pending the outcome o[f] state court proceedings." Id. at 387. The Fourth Circuit affirmed the district court's abstention, even though the time for exhausting state-court remedies had expired and the street preacher's complaint contained a prospective, facial challenge to the noise ordinance and related statutes based on the First Amendment. The Fourth Circuit analyzed "Younger's policy of commanding federal restraint when the federal action is duplicative, casts aspersion on state proceedings, disrupts important state enforcement efforts, and is designed to annul a state proceeding." Id. at 394–95. The Fourth Circuit held that the case "present[ed] the same concerns for federalism and comity that animate established Younger jurisprudence, and therefore . . . as a 'necessary concomitant' of Younger, . . . abstention was appropriate." Id. at 388 (quoting Huffman v. Pursue, Ltd., 420 U.S. 592, 608 (1975)).

By filing suit in this court while litigating the civil penalty in the ongoing proceedings before the North Carolina Industrial Commission, Paulson Beach Ventures seeks to enjoin a dispute that is ongoing at the state administrative level. To the extent Paulson Beach Ventures "seeks to annul

5

or trample on the results of state administrative proceedings, [it] interferes with the State's interest in enforcing its substantive laws as well as its interest in enforcing those laws through available administrative procedures and in its own courts." Id. at 395. Furthermore, unlike the street preacher in Moore, the time for Paulson Beach Ventures to seek state judicial remedies has not expired. See N.C. Gen. Stat. § 97-94(b). Thus, the case for abstention is even stronger than in Moore.

As for the remaining two Younger factors, North Carolina has a substantial interest in enforcing its Workers' Compensation Act and ensuring that employers subject to the Workers' Compensation Act comply with it. Furthermore, as discussed, Paulson Beach Ventures will receive a full and fair opportunity to litigate its three constitutional claims during the state proceedings. See N.C. Gen. Stat. § 97-94(b); see also id. §§ 97-77, 97-80, 97-85, 97-86; Ohio Civil Rights Comm'n, 477 U.S. at 627; Middlesex Cty. Ethics Comm., 457 U.S. at 435–37. Accordingly, Younger and its progeny warrant abstaining. See, e.g., Moore, 396 F.3d at 397.

In opposition to this conclusion, Paulson Beach Ventures cites Sprint Communications, Inc. v. Jacobs, 134 S. Ct. 584 (2013), and argues that the Supreme Court in Sprint Communications substantially narrowed how and when Younger applies. According to Paulson Beach Ventures, in Sprint Communications, the Supreme Court limited Younger's application to (1) state criminal prosecutions; (2) state civil enforcement proceedings; and (3) state civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions. See id. at 588. Paulson Beach Ventures then argues that the ongoing administrative proceedings in the North Carolina Industrial Commission do not fit into any of the three categories the Supreme Court discussed in Sprint Communications.

The court disagrees with Paulson Beach Ventures's interpretation of Sprint Communications. In Sprint Communications, the Supreme Court applied settled Younger abstention doctrine and held

6

that Younger abstention did not apply to parallel federal-court and state-court proceedings challenging intrastate access charges for telephone calls transported via the internet. Id. at 588. In so holding, the Supreme Court applied New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350 (1989) ("NOPSI"), which involved similar parallel federal and state proceedings that fell outside the three categories of proceedings described in Sprint Communications and NOPSI.

Unlike Sprint Communications or NOPSI, the ongoing administrative proceeding before the North Carolina Industrial Commission is a proceeding designed to sanction Paulson Beach Ventures for wrongfully failing to have workers' compensation insurance. A state agency is a party to that ongoing administrative proceeding, and the administrative proceeding fits comfortably within the examples of state civil enforcement proceedings described in Sprint Communications and NOPSI to which Younger abstention applies. See Sprint Commc'ns, 134 S. Ct. at 592; NOPSI, 491 U.S. at 368; Ohio Civil Rights Comm'n, 477 U.S. at 621–25; Middlesex Cty. Ethics Comm., 457 U.S. at 433–34; Moore v. Sims, 442 U.S. 415, 419–23 (1979); Trainor v. Hernandez, 431 U.S. 434, 444 (1977); Huffman, 420 U.S. at 598–99; see also Doe v. Univ. of Ky., No. 16-5170, 2017 WL 2590513, at *2–3 (6th Cir. June 15, 2017); Sirva Relocation, LLC v. Richie, 794 F.3d 185, 189–91, 193–94 (1st Cir. 2015); Gonzalez v. Waterfront Comm'n of N.Y. Harbor, 755 F.3d 176, 180–82 (3d Cir. 2014). Thus, Sprint Communications does not help Paulson Beach Ventures.

II.

In sum, Younger abstention applies. Thus, the court DENIES plaintiff's motion for a preliminary injunction [D.E. 4], and STAYS the action pending conclusion of the state proceedings.

SO ORDERED. This _10_ day of July 2017.

JAMES C. DEVER III
Chief United States District Judge